UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

P8H, INC. d/b/a PADDLE 8,

     Debtor,

Case No.: 20-10809 (SMB)

Chapter 11

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE ESTATE OF P8H, INC.
D/B/A PADDLE 8,

     Plaintiff,

     v.

VALENTINE UHOVSKI, ISABELA
DEPCZYK, NORMAN HANSON,
CHRISTOPHER HSU, PETER RICH,
SERGEY SKATERSCHIKOV,

     Defendants.

Adv. Pro. No. 20-01081 (SMB)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE
AMENDED ADVERSARY COMPLAINT AGAINST VALENTINE UHOVSKI**

**CONDON & FORSYTH LLP**
**7 Times Square**
**New York, New York 10036**
**Tel.: (212) 894-6800**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 3

ARGUMENT ........................................................................................................................ 6

I.    THE AMENDED COMPLAINT REMAINS PROCEDURALLY DEFICIENT BECAUSE IT DOES NOT ASSERT A DERIVATIVE CLAIM ON BEHALF OF THE DEBTOR'S ESTATE AND DEFENDANT DOES NOT OWE DIRECT FIDUCIARY DUTIES TO CREDITORS ..................... 7

II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF THE FIDUCIARY DUTIES OF CARE, LOYALTY, GOOD FAITH AND FAIR DEALING, AND CORPORATE WASTE TO CREDITORS ................................................................................................... 9

    A.    The Complaint Fails to Plead that Defendant Breached the Fiduciary Duty of Care ........................................................................................... 11

    B.    The Amended Complaint Fails to Plead that Defendant Breached the Fiduciary Duty of Loyalty and Good Faith and Fair Dealing ........... 17

    C.    An Officer Cannot Commit Corporate Waste and this Claim must be Dismissed ................................................................................................ 18

III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF THE NEW YORK ARTS AND CULTURAL AFFAIRS LAW ........................................................................................................ 19

CONCLUSION .................................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
   906 A.2d 168 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v.*
   *Billett*, 931 A.2d 438 (Del. 2007) ............................................................8

*In re BH S & B Holdings LLC*,
   420 B.R. 112 (Bankr. S.D.N.Y. 2009) ...........................................10, 11

*In re BMT-NW Acquisition, LLC*,
   582 B.R. 846 (Bankr. D. Del. 2018) ......................................................17

*In re Caremark Int'l Inc. Deriv. Litig.*,
   698 A.2d 959 (Del. Ch. 1996).................................................................11

*Crescent Mach I Partners L.P. v. Turner*,
   846 A.2d 963 (Del. Ch. 2000).................................................................11

*CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd.*,
   No. 03-cv-7936, 2007 WL 2915181 (S.D.N.Y. Oct. 4, 2007).........10, 11

*In re Fedders North America, Inc.*,
   405 B.R. 527 (Bankr. D. Del. 2009) .........................................................6

*Gagliardi v. TriFoods Int'l, Inc.*,
   683 A.2d 1049 (Del. Ch. 1996)...............................................................11

*Giuliano v. Schnabel (In re DSI Holdings, LLC)*,
   574 B.R. 446 (Bankr. D. Del. 2017) .......................................................18

*KDW Restructuring & Liquidation Servs. LLC v. Greenfield*,
   874 F. Supp. 2d 213 (S.D.N.Y. 2012)...................................................6, 8

*In re Musicland Holding Corp.*,
   424 B.R. 95 (Bankr. S.D.N.Y. 2010) ............................................ *passim*

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*,
   930 A.2d 92 (Del. 2007) ..................................................................7, 8, 9

*Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*,
   863 A.2d 772 (Del. Ch. 2004)..................................................................10

*Ross v. Bernhard*,
   396 U.S. 531 (1970)...................................................................................7

ii

*In re Sabine Oil & Gas Corp.*,
   547 B.R. 503 (Bankr. S.D.N.Y.), *aff'd*, 562 B.R. 211 (S.D.N.Y. 2016) ...............13, 14, 15, 16

*In re Signature Apparel Group LLC*,
   577 B.R. 54 (Bankr. S.D.N.Y. 2017) ......................................................................................11

*In re Tower Air, Inc.*,
   416 F.3d 229 (3d Cir. 2005)..........................................................................................10, 11

*In re Wonderwork, Inc.*,
   611 B.R. 169 (Bankr. S.D.N.Y. 2020) ..................................................................12, 14, 17, 18

**Statutes**

N.Y. Arts & Cult. Aff. Law § 11.01 ..........................................................................................19

New York Arts and Cultural Affairs Law........................................................................... *passim*

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) .........................................................1, 3, 4, 5, 11

Defendant Valentine Uhovski  submits this memorandum of law in support of his motion to dismiss the Amended Complaint filed against him by the Official Committee of Unsecured Creditors (the "Committee" or the "Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

On April 30, 2020, this Court granted standing through an Order allowing the Official Committee of Unsecured Creditors to pursue claims against officers and directors of the Debtor, P8H, Inc. ("Paddle 8") on behalf of the Debtor's Estate.  Mr. Uhovski was the former Chief Executive Officer of Paddle 8 for a brief three month period from November 15, 2019 until his resignation on February 12, 2020.  The Committee filed the Complaint in this action against Mr. Uhovski for alleged breaches of his fiduciary duties that he owed to creditors during his tenure as CEO of Paddle 8. The Committee later filed an Amended Complaint alleging an additional cause of action and setting forth additional defendants.

The Amended Complaint remains legally deficient and the claims against Uhovski should not last beyond the pleading stage. Indeed, the Amended Complaint focuses much less on the actions of Mr. Uhovski because, in reality, he did nothing wrong. In fact, the Amended Complaint confirms the general fact that Mr. Uhovski submitted a proposed budget to the Board of Director and that it was the Board of Directors who failed to act. *See* Amended Complaint at ¶18.  The claims asserted by the Committee in the Amended Complaint are procedurally deficient because the Committee does not assert a derivative claim on behalf of the Debtor's estate, but rather alleges direct claims by creditors against Mr. Uhovski. The Amended Complaint also fails substantively under Delaware law because Delaware law precludes the Committee from alleging that Paddle 8 officers owe direct fiduciary duties to creditors in these

1

circumstances, nor can they obtain standing to make such allegations.   In addition, the substantive allegations for breaches of fiduciary duty alleged against Mr. Uhovski fail because all of the alleged actions by Mr. Uhovski are protected by the Delaware business judgment rule. There is simply no basis under Delaware Law to hold Mr. Uhovski liable for these alleged breaches and Mr. Uhovski's actions, as alleged, do not rise to the level of "reckless disregard" which is required to assert such claims. There is no basis under Delaware law to second-guess his business decisions and there are no allegations in the Amended Complaint that Mr. Uhovski acted in furtherance of "his own personal interest or benefit."

Furthermore, the Committee's new addition of the cause of action for a violation of the New York Arts and Cultural Affairs Law is a red herring and cannot be maintained. The New York Arts and Cultural Affairs Law provides a remedy for an Artist to pursue an Art Merchant for mishandling art work or the proceeds derived from art work. It is unequivocally the case that Mr. Uhovski is not an Art Merchant and that the Committee is not an Artist. On these facts alone, the claim should not be sustained. The Committee was only granted derivative standing to bring claims against the officers and directors of the Debtor on behalf of the Debtor, which is also not an Artist. There is no explanation for why the Committee feels entitled to assert this claim and it too should be dismissed.

It is apparent that the Committee only filed the initial Complaint against Uhovski to preserve the right of the Debtor's estate to about $1 million in insurance policy proceeds, which was to expire on May 1, 2020. See Amended Complaint at ¶6.   However, it is plainly apparent that the Committee cannot allege that Mr. Uhovski did anything wrong, much less take actions that would subject him to legal liability to the Paddle 8 Estate.   Mr. Uhovski is a young father without many assets who has been dragged along in this lawsuit for strategic purposes despite his

obvious lack of culpability or liability.   The continued pendency of this lawsuit is directly

impeding his ability to move on in his career and provide for his family. It is far past time for the

claims against him to be dismissed.

### STATEMENT OF FACTS

Valentine Uhovski began working at Paddle 8 on June 24, 2019 as the Head of

Partnerships, Marketing and Social.   *See* attached the Declaration of Valentine Uhovski

(hereinafter referred to as "Uhovski Dec.") at ¶ 3.   Soon thereafter, in November of 2019, Mr.

Uhovski was promoted to the Chief Executive Officer ("CEO") of Paddle 8 and was promised a

12-month budget by previous Managing Director, Defendant Izabela Depczyk. Upon receipt of

his counter-signed letter agreement to assume the CEO position, Mr. Uhovski also learned that

the proposed 2020 budget from the prior CEO had been rejected by the prior Board of Directors.

Shortly after assuming his CEO duties, Mr. Uhovski began working with John Textor ("Textor"),

the Chairman of the Board of Directors (the "Board") of Paddle 8, to approve a fiscal budget for

2020.   While Uhovski and Textor attended an Art Basel event in Miami in the beginning of

December, 2019, Uhovski provided a draft budget for 2020 to Textor and Textor promised that

he would review it for approval. This began a pattern of communications in which Mr. Uhovski

repeatedly pressed Textor for responses and approval (via emails, texts messages and in-person

meetings) of both the budget and for access to Paddle 8's Line of Credit, only to receive no

answer or non-committal and evasive communications from Textor.  *Id.* at ¶¶ 4-7.

In December 2019, Uhovski requested that Paddle 8 be able to draw on its Line of Credit

to meet its upcoming and immediate payment obligations, but Textor failed to provide a response

to this request. *See Id.* at ¶ 8, Ex. B at pp. 1-9, 16, 23, 30, and 38. Paddle 8 was forced to draw

down all remaining liquid resources in order to meet basic and immediate payment obligations

such as rent and payroll. *Id.* at ¶ 9. Mr. Uhovski followed up with Textor multiple times about the proposed budget on January 6, 7, and 8, and Textor finally responded on January 9, but he requested additional information regarding Paddle 8's cash flow position. *See Id.* at ¶ 10, Exs. B, at p. 38, C, and D. Uhovski immediately responded with a detailed executive summary. Textor responded two (2) days later, but once again refused to allow Paddle 8 to draw on its Line of Credit, as confirmed by the Amended Complaint. *See* Amended Complaint at ¶19. As recognized by the Trustee's complaint filed against John Textor in a related adversary proceeding, Uhovski reached out to Textor multiple times and stressed the importance of ensuring that Paddle 8 meet all of its payment obligations, but Textor still made no commitment to approve a budget or cover operating expenses of the Debtor. *See* Textor Complaint at ¶48-9. Uhovski requested that the partner payments be met (i.e. the payments to consignors of art) in two meetings with Textor and the team in New York on January 16 and 22, and also while on a call with the Board on January 30, but there was still no commitment from Textor. Indeed, Textor outright refused to give any consideration to paying the partners of art through drawing on the line of credit or providing additional financing, as confirmed in the complaint filed in the adversary proceeding against Textor. *See* Textor Complaint at ¶48, 55.

Eventually, Rameshkumar Ganeshan, Paddle 8's Head of Finance, used the remaining bank funds to meet the operating expenses and payroll for the end of January 2020. Meanwhile, understanding the pressing needs to make payroll and cover operating expenses for Paddle 8, as well as in an effort to be transparent, Uhovski hosted a staff town hall meeting with all Paddle 8 employees and advised that the Board had yet to approve the proposed budget, which was submitted nearly one month earlier. *Id.* at ¶¶ 11-13.

On February 3, 2020, Uhovski presented two additional revised budgets to the Board (in total he had presented seven (7) versions of a revised budget), but Textor once again failed to approve any budget.  Additionally, Uhovski even proposed the idea of an asset sale in order to meet the Debtor's liquidity needs, but Textor vehemently opposed the proposal.  Textor attempted to arrange a meeting in Juniper, Florida (with less than a day's notice) to discuss payroll and budgeting issues, but Uhovski advised in advance that he would be unable to make the particular meeting date due to a family matter, and requested a meeting date two days later. No financial commitment by Textor was made at the meeting attended by Rameshkumar Ganeshan and Michael McClellan (Director of Operations). On February 12, 2020, after months of indecision and refusal from the Board to approve any budget or draw on the Debtor's line of credit, Uhovski resigned from his position as CEO of the Debtor.  *Id.* at ¶¶ 14-16, Ex. E.

Mr. Uhovski worked diligently and honestly to ensure the long-term success of Paddle 8, but, as now confirmed by the facts in the Amended Complaint, was met with complete resistance and refusal to provide timely and substantive responses by Textor and the Paddle 8 Board.  Mr. Uhovski could not make any material changes to the Company or ensure that the Company meet its payment obligations without approval from Textor and the Board.  In the absence of any ability to move forward on an approved budget or access additional financial resources, the Paddle 8 finance team managed company resources in order to meet the most pressing and immediate payment obligations.  *Id.* at ¶ 17.

The Committee is now alleging that Uhovski's payment of some creditors to the exclusion of other creditors was "gross mismanagement and disloyalty" and that he only acted in furtherance of his own personal interest or benefit. *See* Uhovski Dec. at ¶ 2, Ex. A. at ¶¶ 30-31. This is nothing more than a conclusory allegation without any support – the reality is that the

Committee has not and cannot allege any personal benefit to Mr. Uhovski from his efforts to keep the company functioning in the absence of the necessary financing from Mr. Textor, the senior Lender and Chairman of the Board.  Uhovski worked incessantly to ensure that the Board approve a budget so that Paddle 8 could meet all of its payment obligations, but it was the Board, at Textor's direction, who refused to approve any plan or budget for 2020 and did not allow Paddle 8 to access its Line of Credit.   However, while this background may provide the Court useful information as to the true state of events, it is unnecessary for resolution of the pending motion because the Complaint is deficient both in form and in substance and therefore must be dismissed.

## ARGUMENT

As an initial matter, Delaware Law governs this adversary proceeding under the "internal affairs" doctrine.  New York courts decide questions relating to the corporation's internal affairs in accordance with the law of the place of incorporation, because otherwise a corporation could be faced with conflicting demands.  *KDW Restructuring & Liquidation Servs. LLC v. Greenfield*, 874 F. Supp. 2d 213, 221 (S.D.N.Y. 2012).   It is undisputed that Paddle 8 is a Delaware Corporation, thus Delaware law applies.  *See In re Musicland Holding Corp.,* 424 B.R. 95, 100 (Bankr. S.D.N.Y. 2010) ("Musicland was incorporated in Delaware, and accordingly, Delaware law governs the issue of whether the individual Best Buy Defendants breached their fiduciary duties.").  "Few, if any, claims are more central to a corporation's internal affairs than those relating to alleged breaches of fiduciary duties by a corporation's directors and officers." *In re Fedders North America, Inc.*, 405 B.R. 527, 539 (Bankr. D. Del. 2009).

## I.    THE AMENDED COMPLAINT REMAINS PROCEDURALLY DEFICIENT BECAUSE IT DOES NOT ASSERT A DERIVATIVE CLAIM ON BEHALF OF THE DEBTOR'S ESTATE AND DEFENDANT DOES NOT OWE DIRECT FIDUCIARY DUTIES TO CREDITORS

Under Delaware Law, shareholders of a company may bring derivative lawsuits on behalf of the company when it has been harmed by the actions of its corporate directors and officers.  If the corporate directors and officers of the company fail to prosecute an action which harms the corporation, then the residual beneficiaries of the corporation, i.e. the shareholders, are permitted to bring derivative actions and seek recovery on behalf of the corporation.  The substance of any derivative claim rests on alleged breaches of fiduciary duties, notably those of the duty of care, the duty of loyalty, and good faith by the officers and/or directors to the corporation itself.  It is well settled that directors and officers owe these fiduciary duties to the corporation. *See generally Ross v. Bernhard*, 396 U.S. 531, 534–35, (1970) ("The remedy made available in equity was the derivative suit, viewed in this country as a suit to enforce a corporate cause of action against officers, directors, and third parties").

Creditors are not permitted to bring derivative actions on behalf of the corporation because corporate directors and officers do not generally owe fiduciary duties to creditors.  To the contrary, the relationship of a creditor with a corporation is contractual in nature and their legal remedies for wrongs or harms rest on what the parties negotiated for in the contract.  *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007) (holding that while directors and officers owe their fiduciary obligations to the corporation and its shareholders, "the general rule is that directors do not owe creditors duties beyond the relevant contractual terms.").

When a company becomes insolvent, it is possible for creditors to have standing in certain circumstances to maintain a derivative lawsuit against directors and officers ***on behalf of***

7

*the corporation* for breaches of fiduciary duties.  *Id.* at 101-02.  However, in those limited

circumstances, the creditors cannot maintain direct claims against directors or officers, but rather

such claims must take the nature of a derivative action asserting rights on behalf of corporation.

In the seminal Delaware Court case, *Gheewalla*, the Supreme Court of Delaware expressly

rejected the notion that directors or officers could owe direct fiduciary duties to creditors,

reasoning that it would create "uncertainty for directors who have a fiduciary duty to exercise

their business judgment in the best interest of the insolvent corporation."  *Id.* at 103.  In short, the

primary object of the fiduciaries' duties always remains the corporation, and creditors are

occasionally granted standing to pursue the breaches of fiduciary duties by officers or directors

owed to the corporation upon insolvency. The creditors' ability to assert claims on behalf of the

Debtor's estate flows from the fact that the creditors, as a whole, become the residual

stakeholders (as opposed to the shareholders) of the corporation when the corporation's liabilities

significantly exceed its assets.  *See Id.* at 101 ("When a corporation is insolvent, however, its

creditors take the place of the shareholders as the residual beneficiaries of any increase in

value."); *see also Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 175 (Del. Ch. 2006),

*aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007). (…. "when the firm

is insolvent, directors are free to pursue value maximizing strategies, while recognizing that the

firm's creditors have become its residual claimants…").

. First, the Amended Complaint alleges that damages in excess of $1,000,000.00 were

sustained by the Debtor as the result of the officers acts of "gross mismanagement and disloyalty

to the Debtor's Unsecured Creditors."  *See* Uhovski Dec. at ¶ 2, Ex. A., at ¶ 21.  This Amended

Complaint simply cannot pass muster as a permissible pleading by creditors seeking to allege

derivative claims on behalf of the corporation. The focus of the Court's analysis on these issues,

as described in *Gheewalla*, is that the corporate duties are at all times owed to the corporation, not to creditors. Yet, this Amended Complaint alleges that the purported duties owed by Paddle 8 Officers, such as Mr. Uhovski, are owed directly to the creditors.  Although the Committee may rely upon this Court's April 30 Standing Order granting it standing to pursue derivative claims (to the extent it is able) on behalf of the Debtor's estate, the Committee does not have standing to pursue breaches of direct fiduciary duties by a corporate officer to creditors, contrary to Delaware law.  *In re Musicland Holding Corp.*, 424 B.R. 95, 101 (Bankr. S.D.N.Y. 2010) ("Individual creditors may sue derivatively, but 'have no right to assert direct claims for breach of fiduciary duty against corporate directors.'"). For similar standing reasons, it also procedurally cannot maintain an action for breach of the New York Arts and Cultural Affairs Law, as the Committee is not an Artist and therefore has no standing to invoke the law.

Thus, the Amended Complaint still fails as a procedural matter because the Committee is pursuing breaches of fictitious direct duties owed by Paddle 8's CEO Mr. Uhovski to unsecured creditors. Delaware expressly precludes such duties and the Complaint must be dismissed on that basis.

## II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF THE FIDUCIARY DUTIES OF CARE, LOYALTY, GOOD FAITH AND FAIR DEALING, AND CORPORATE WASTE TO CREDITORS

The Committee attempts to plead claims that Mr. Uhovski breached the fiduciary duties of care and loyalty to the Debtor's Unsecured Creditors by stating that Mr. Uhovski utilized designated proceeds to cover the operating expenses of the Debtor. *See* Uhovski Dec. at ¶ 2, Ex. A, ¶ 21 The Committee claims that these acts caused damages to the unsecured creditors in excess of $1,000,000.00.  *See Id.* at ¶ 2, Ex. A, at ¶ 33

As an initial matter, the Amended Complaint's allegations are substantively deficient because, as discussed above, Mr. Uhovski as CEO owed no duties to those creditors as a matter of Delaware law. The only fiduciary duties Mr. Uhovski owed were to Paddle 8. While the creditors may have been granted standing to pursue derivative actions here, those fiduciary duties have not and cannot run directly to creditors. *Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*, 863 A.2d 772, 776 (Del. Ch. 2004) ("Claims of this type are classically derivative, in the sense that they involve an injury to the corporation as an entity and any harm to the stockholders and creditors is purely derivative of the direct financial harm to the corporation itself. The fact that the corporation has become insolvent does not turn such claims into direct creditor claims, it simply provides creditors with standing to assert those claims.").

Moreover, even if the Amended Complaint alleged a supposed breach of fiduciary duty to the corporation owed by Mr. Uhovski, the facts alleged in the Amended Complaint completely fail to pass muster to survive a motion to dismiss under the Delaware business judgment rule. The Committee amended the initial Complaint in an attempt to side step the business judgment rule's presumption, but failed in its latest pleading. The new allegation in the Amended Complaint, *i.e.* that Uhovski violated the New York Arts and Cultural Affairs Law, is not sufficient because the law is inapplicable to him, as discussed below. Under the Delaware business judgment rule, the Committee is required to "plead-around" the business judgment rule. *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005). The automatic presumption under Delaware law is that directors and officers of a company "have acted on an informed basis and in the honest belief they acted in the best interest of the corporation." *In re BH S & B Holdings LLC*, 420 B.R. 112, 146 (Bankr. S.D.N.Y. 2009) (quoting *CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd.*, No. 03-cv-7936, 2007 WL 2915181, at *3 (S.D.N.Y. Oct. 4, 2007)), *aff'd*

*as modified*, 807 F. Supp. 2d 199 (S.D.N.Y. 2011); *see also Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1051 (Del. Ch. 1996) ("in the absence of facts showing self-dealing or improper motive, a corporate officer or director is not legally responsible to the corporation for losses that may be suffered as a result of a decision that an officer made or that directors authorized in good faith").   The business judgment rule prohibits a court from second-guessing management decisions of officers which the court believes to be "stupid, … 'egregious' or 'irrational.'"   *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

To withstand a Rule 12(b)(6) motion, the Committee is required to plead around the business judgment rule, and demonstrate why the complained-of actions does not fall within the ambit of the rule.   *In re Tower Air, Inc*., 416 F.3d 229, 238 (3d Cir. 2005).   This requires that the Committee plead facts which, if true, would take the Defendant's actions outside the protection of the business judgment rule.   *BH S&B*, 420 B.R. at 146 (quoting *Crescent Mach I Partners L.P. v. Turner*, 846 A.2d 963, 984 (Del. Ch. 2000)).   The burden is on the Committee to "show irrationality: a plaintiff must demonstrate that no reasonable business person could possibly authorize the action in good faith." *In re Tower Air*, *Inc*., 416 F.3d 229, 238 (3d Cir. 2005).   As is shown below, Mr. Uhovski did not breach any of the fiduciary duties owed to Paddle 8, as his actions were rational, informed, and made in good faith.

### A.   The Complaint Fails to Plead that Defendant Breached the Fiduciary Duty of Care

Under Delaware law, the duty of due care is the obligation of officers and directors "to inform themselves, prior to making a business decision, of all material information reasonably available to them."   *In re Signature Apparel Group LLC*, 577 B.R. 54, 99 (Bankr. S.D.N.Y. 2017) (quoting *Cede & Co.*, 634 A.2d at 367).   The duty of care specifically requires directors and officers to "use that amount of care which ordinarily careful and prudent [persons] would

use in similar circumstances" and consider "all material information reasonably available" in making decisions on behalf of the corporation. This generally requires "a showing of gross negligence which generally 'requires directors and officers to fail to inform themselves fully and in a deliberate manner.'" *In re Wonderwork, Inc.*, 611 B.R. 169, 195 (Bankr. S.D.N.Y. 2020).

In *In re Wonderwork*, the plaintiff brought an adversary proceeding against the debtor's CEO and former Chief Financial Officer ("CFO") alleging breaches of their fiduciary duty of care. The trustee alleged that the debtor did not treat funds as was designated in the Debtor's policy manual, and that rather, it treated all funds as fungible and did not treat restricted funds in a certain way. *Id.* at 206-07. Specifically, the complaint alleged that the officers breached their fiduciary duty of care by "routinely mismanaging the Debtor, including failing to properly account for and spend Debtor's donations and restricted funds" and further "authorizing excessive and inappropriate spending of Debtor's funds." *See* Complaint at ¶ 141, *Vincent A. Sama, as Litigation Trustee of the WW Litigation Trust v. Brian Mullany, Hana Fuchs, et. al.*, 611 B.R. 169 (Bankr. S.D.N.Y. 2018) (No. 18-01873-SMB). This Court dismissed the claims for breach of fiduciary duty against both officers.

Ultimately, this Court dismissed the claim against the CEO because the allegations in the complaint were not specifically tied to his conduct. However, the decision in *Wonderwork* makes clear that, even if the complaint did properly connect the allegations to the CEO, that it would at most result in ordinary negligence and fail to rise to the level of gross negligence required to breach the duty of care. Regarding the CFO, this Court noted that the allegations of "improperly used joint cost accounting principles" and "charging against the restricted funds a portion of the $25 million Debtor spent on direct mail" would, at worst, imply "negligent bookkeeping and negligent accounting practices," which falls short of gross negligence. *Id.* at 207. Thus,

although the complaint alleged that the debtor misused funds, this Court still dismissed the complaint as against the CEO and the CFO of the debtor, noting that it would at most rise to ordinary negligence and fall short of the required standard.

Additionally, in *In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 557 (Bankr. S.D.N.Y.), *aff'd*, 562 B.R. 211 (S.D.N.Y. 2016), the court held that the officers of a corporation did not breach either their duty of care or duty of loyalty in approving a merger which adversely affected the debtor's unsecured creditors. The unsecured creditors committee in their complaint alleged that the officers and directors of the debtor should have obtained solvency advice after some doubts were expressed about the financial viability of the merger and the liquidity challenges it presented. *Id.* at 557-58. Specifically, the committee alleged that the officers should have elected to close under an alternate financing arrangement that would have provided a higher probability of ensuring that unsecured creditors of the debtor were paid before other creditors. *Id.* The court did not find these claims colorable and refused to grant standing to the creditor committee.[1] *Id.* In short, the court acknowledged that it may have been the wrong decision to proceed with the merger, but that it did not rise to the level of reckless indifference and that the directors and officers were fully informed of all relevant materials and still believed that they were making the correct decision for the company. *Id.*

In that same vein, courts have recognized that the type of harm which emanates from the actions of a company's officers and directors must affect all creditors, not just some creditors at the expense of others, and truly harm the corporation. The Committee cannot bring actions on

---

[1] Moreover, the claims asserted by the Committee in this action are certainly not colorable and the Committee should not have been granted standing to pursue these claims in the first instance. To obtain derivative standing, "a creditors' committee typically must satisfy a two-part test. First, a committee presents colorable claims for relief 'that on appropriate proof would support a recovery,' and second, a committee demonstrates that the 'debtor unjustifiably failed to bring suit.'" "The inquiry as to whether a claim is "colorable" under STN is similar to that undertaken by the court on a motion to dismiss." *In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 514–15.

the basis that some creditors may have been injured to the exclusion of others because that simply leads to second guessing the decisions of officers and directors which are protected by the business judgment rule. In *In re Musicland*, the court discussed that "the corporate directors and officers must exercise their fiduciary duties for *the benefit of the entire community of interests* [emphasis added], including creditors". 424 B.R. 95, 101. Similarly in *In re Sabine Oil & Gas Corp.,* the court held that directors and officer did not breach the duty of loyalty or care when the committee was essentially arguing that some creditors were more favored by a financing plan than others. *Id.* at 559 ("The Legacy Forest Directors and Officers assert that an allegation that the board favored one class of stakeholders over another, as the Committee alleges occurred here, fails to state a claim for breach of the duty of loyalty. The Court agrees.").  Thus, courts have focused on the harm affecting the stakeholder community as a whole, without regard to individual stakeholders, which is precisely the argument that Committee is advancing.  Here, the entire thrust of the Committee's complaint against Uhovski is that Paddle 8 funds that should have been designated for certain creditors, i.e. the art merchants, and were instead utilized to pay other creditors, such as the landlord and employees through general operating expenses.

None of the items alleged in Count I of the Complaint constitutes a breach of the fiduciary duty of care.  At best, they purport to identify wrong business decisions – precisely the type of decisions that the business judgment rule prevents courts from second-guessing.  As in *In re Wonderwork*, Uhovski's actions likewise fail to rise to the level of gross negligence and reckless indifference necessary to overcome the business judgment rule.  In essence, the Committee in this action is making a similar argument to what was argued in *In re Wonderwork*.  The Committee's argument is premised on the theory that Uhovski's mismanagement or misuse of certain funds that should have been designated for certain creditors (consignors of art work) were

instead utilized to pay the Debtor's operating expenses. *See* Amended Complaint at ¶21. The Committee contends that this breached Uhovski's fiduciary duty of care. *See* Amended Complaint at ¶31. The Committee is essentially attempting to argue that each time that the CEO of a company faces a liquidity problem and chooses to pay one creditor over another creditor, then the CEO has breached his fiduciary duty of care to the corporation as whole. Here, Mr. Uhovski logically approved expenditures – in a company facing a cash crisis due to Mr. Textor's actions as Chairman of the Board of Directors – to pay the most immediate creditors, such as the landlord (rent), wage creditors (payroll), past due payments, and worked in good faith to get a budget approved.

This is not the end goal of the fiduciary duty of care. It is well established that the central duty of any CEO is to manage the day-to-day affairs of the corporation, as well as safeguard the value and viability of the company, which, in part, includes ensuring that the company meets its liabilities and operating expenses. Uhovski managed and paid the Debtor's operating expenses because he truly believed it would assist the company in meeting its short term liabilities. Even if it could be alleged that his actions might have been the wrong business decision – which is doubtful -- they certainly do not rise to the standard of gross negligence and are absolutely protected by the business judgment rule. CEO's routinely make difficult business decisions on a daily basis, and Uhovski made the decision to use available funds to pay the operating expenses in the belief that the Debtor would be able to repay other creditors from drawing on the Line of Credit and from various other additional cash flows such as an asset sale. Just as the directors and officers in *In re Sabine* proceeded with the merger because they believed it would preserve the long term viability of the company, Uhovski authorized the use of certain funds to meet the

immediate liabilities and obligations of the Debtor because he believed it was in the best interest
of the company to continue paying its operating expenses to preserve its viability.

Importantly, no harm was done to the corporation or to the creditors as a whole as the
result of Mr. Uhovski's actions. Following the analysis of the *In re Musicland* and *In re Sabine
Oil & Gas Corporation* decisions, Mr. Uhovski did not siphon away funds from the general
creditor pool, nor did he siphon away funds from the Debtor. The creditors as a whole, and the
corporation as whole, were not harmed. Simply because some creditors were paid at the expense
of others is of no consequence. The Committee must allege a harm to all creditors not some
creditors to the exclusion of others. *In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 556 ("Under
Delaware law, directors of an insolvent entity discharge their fiduciary duties by maximizing
the value of the insolvent entity for the benefit of all stakeholders, and they do not owe any
specific duty to a particular constituency, creditor, or otherwise.").

Additionally, the pleading does not allege that Uhovski failed to properly inform himself
prior to making a business decision, or otherwise neglected or ignored his duties, a necessary
element to breach the fiduciary duty of care. Furthermore, the Amended Complaint also fails to
explain how, his conduct represents an "extreme departure from the ordinary standard of care
and a reckless disregard" of his duties and responsibilities. This is especially true in light of the
fact that the Board, not Uhovski, was responsible for approving the multiple budgets he brought
to it and allowing Uhovski to access the Line of Credit. The Amended Complaint itself
acknowledges Uhovski's repeated attempts to obtain Board approval for accessing credit in order
to make partial payments to the consignors of art work. *See* Amended Complaint at ¶19. Mr.
Uhovski maintained his duties and responsibilities by seeking board approval for a fiscal budget,
as he was required to do and the Board sat on the budgets, never approving them. Indeed, in the

very same pleading in which the Committee ignores Uhovski's obligation to obtain Board approval for such actions, the Committee also alleges that Uhovski failed to "follow the directions of the Board of Directors." The inherent premise of the Committee's Amended Complaint is fatally flawed and the claims based on the allegation of breach of the duty of care should be dismissed.

### B.    The Amended Complaint Fails to Plead that Defendant Breached the Fiduciary Duty of Loyalty and Good Faith and Fair Dealing

A claim for the breach of the duty of loyalty may be shown where an officer intentionally acts with a purpose other than advancing the best interests of the corporation.  It cannot be shown where an officer acts in the good faith belief that his actions are in the corporation's best interest. *In re Wonderwork, Inc.*, 611 B.R. 169, 195 (Bankr. S.D.N.Y. 2020).   A breach requires a showing that an officer was on both sides of a transaction that was not entirely fair to the company, i.e. self-dealing.  *In re BMT-NW Acquisition, LLC*, 582 B.R. 846, 862–63 (Bankr. D. Del. 2018).   As is clear, a sub-element of the duty of loyalty is a duty of good faith.  *In re Wonderwork, Inc.* 611 B.R. 169, 194.  A claim for breach of the duty of good faith requires facts to demonstrate one of three actions: the fiduciary intentionally acted with a purpose other than that of advancing the best interests of the corporation; the fiduciary acted with the intent to violate applicable positive law; or the fiduciary intentionally failed to act in the face of a known duty to act, evidencing a conscious disregard for his duties. *In re BMT-NW Acquisition, LLC*, 582 B.R. 846, 862–63 (Bankr. D. Del. 2018).  The Complaint by the Committee of Unsecured Creditors fails to meet any of these standards.

At all times, Uhovski acted with the express purpose of advancing the best interests of the corporation and always acted in good faith. Importantly, the Complaint fails to allege that Uhovski was on both sides of a transaction that was unfair to the corporation or that he engaged

in any kind of self-dealing. The Complaint and this cause of action should be dismissed for these

reasons alone. Indeed, it is clear that the Amended Complaint does not and cannot allege that

Uhovski personally benefitted at all from the complained-of actions. The Complaint further fails

to allege that Uhovski intentionally acted with a purpose other than to advance the best interests

of the corporation, that he acted with the intent to violate applicable positive law; or that he

failed to act in the face of a known duty to act. As is clear and for the reasons discussed below,

Mr. Uhovski plainly never acted with the intent to violate a positive law. To the extent that the

Committee contends that Uhovski violated the New York Arts and Cultural Affairs Law, that

law does not apply to him since he is not an Art Merchant, as discussed below. Nor is there any

allegation that Uhovski even knew of the existence of this law, which is a necessary prerequisite

to an allegation of the breach of the duty of loyalty. Lastly, the Amended Complaint fails to

explain how his actions are disloyal to Paddle 8 and how he breached the duty of good faith of

fair dealing. The Amended Complaint simply cites the general standard for the duty of loyalty in

a conclusory manner, but fails to specify how his alleged conduct falls outside the duty of

loyalty, thus failing to plead another prerequisite to sue for breach of loyalty.

### C.    An Officer Cannot Commit Corporate Waste and this Claim must be Dismissed

A claim for waste will not lie against an officer of a corporation, as only directors may be

liable for corporate waste under Delaware law. *See Giuliano v. Schnabel (In re DSI Holdings,
LLC)*, 574 B.R. 446, 476 (Bankr. D. Del. 2017) ("[T]he Trustee has not cited to (nor did I

uncover) any cases in which the Delaware courts have determined that officers or controlling

shareholders could be liable for corporate waste."). "The test to show corporate waste is difficult

for any plaintiff to meet." *In re Wonderwork, Inc.,* 611 B.R. 169, 208 (Bankr. S.D.N.Y. 2020).

Aside from the fact that the Amended Complaint is devoid of facts which show that Mr. Uhovski

committed corporate waste, it is clear that only directors of a Delaware corporation may be liable under such an action, not officers. Accordingly, the corporate waste claim alleged against Mr. Uhovski in Count I of the Amended Complaint should be dismissed.

## III. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF THE NEW YORK ARTS AND CULTURAL AFFAIRS LAW

The claim against Uhovski based on the New York Arts and Cultural Affairs Law also must be dismissed. The New York Arts and Cultural Affairs Law imposes a consignor/consignee relationship upon an Artist and an Art Merchant when artwork is delivered to the art merchant for the purpose of "exhibition and/or sale on a commission." The consignee is an agent of the consignor with respect to the work and a statutory trust is imposed on the art which follows any proceeds from the sale of the artwork. N.Y. Arts & Cult. Aff. Law § 11.01 (McKinney). The Statute defines an "Art Merchant" as "a person who is in the business of dealing, exclusively or non-exclusively, in works of fine art or multiples, or a person who by his occupation holds himself out as having knowledge or skill peculiar to such works, or to whom such knowledge or skill may be attributed by his employment of an agent or other intermediary who by his occupation holds himself out as having such knowledge or skill." *Id.* An "Artist" means the creator of a work of fine art or, in the case of multiples, the person who conceived or created the image which is contained in or which constitutes the master from which the individual print was made. *Id.*

As an initial matter, the Committee can only have standing to pursue claims on behalf the Debtor's estate. It is undisputed that the Debtor is not an Artist and therefore the Committee cannot maintain this claim because the Debtor could not even maintain it itself. To the extent the Committee purports to bring this cause of action on behalf of Artists who have become unsecured creditors, there is no such allegation in the Amended Complaint that it does so on

behalf of an Artist, as that term is defined in the statute. Indeed, in the context of a bankruptcy case, this cause of action is wholly inappropriate and the proper remedy would be for the actual artist to allege this cause of action against the Debtor, not for unsecured creditors' committees to allege it against an individual officer of the Debtor. Additionally, and as discussed above, the Committee must represent the *interest of all unsecured creditors* who are part of the entirety of community stakeholders, and not just the interest of some creditors at the expense of others.

More importantly, Mr. Uhovski is not an Art Merchant. Mr. Uhovski was only the CEO of the Debtor for a brief period of time and there is no case law that has extended the definition of an Art Merchant to impose liability of individual employees of an Art Merchant. Nor does the Amended Complaint explain or allege how Mr. Uhovski is an Art Merchant. Mr. Uhovski was never in privity of contract with the Artists and did not owe direct fiduciary duties to the Artists. Paddle 8 could be the only entity in the facts that could plausibly be argued to be an Art Merchant, and it is questionable whether or not that definition could possibly apply to Paddle 8. Even if Paddle 8 was considered to be an "Art Merchant," the Debtor would have owed those duties to the Artists, not the Committee. Mr. Uhovski owed duties to the Debtor and fulfilled those duties.

## **CONCLUSION**

For the foregoing reasons, and those set forth in the accompanying Affidavit of Valentine Uhovski, Defendant Valentine Uhovski respectfully request that his motion be granted and that an order of this Court be entered dismissing the Committee's adversary complaint with prejudice.

Dated:  December 3, 2020
New York, New York

CONDON & FORSYTH LLP

/s/ Joseph E. Czerniawski
Joseph E. Czerniawski
Matthew D. Emery
7 Times Square, 18th Floor
New York, New York 10036
Tel:  (212) 490-9100

*Attorneys for Valentine Uhovski*

21