# EXHIBIT A

**THE LAW OFFICES OF RICHARD J. CORBI PLLC**
1501 Broadway, 12th Floor
New York, New York 10036
Tel: (646) 571-2033
Email: rcorbi@corbilaw.com
Richard J. Corbi

*Counsel for the Official Committee*
*Of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>P8H, INC. d/b/a PADDLE 8,<br><br>      Debtor. | Case No.: 20-10809 (SMB)<br><br>Chapter 11 |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ESTATE OF P8H, INC. D/B/A PADDLE 8,<br><br>      Plaintiff,<br><br>      v.<br><br>VALENTINE UHOVSKI, ISABELA DEPCZYK, NORMAN HANSON, CHRISTOPHER HSU, PETER RICH, SERGEY SKATERSCHIKOV.<br><br>      Defendants. | Adv. Pro. No. 20-01081 (SMB) |

**FIRST AMENDED COMPLAINT**

The Official Committee of Unsecured Creditors (the "Committee" or the "Plaintiff") appointed in the Chapter 11 bankruptcy case of P8H, Inc. d/b/a Paddle 8 ("P8H" or the

"Company") by and through its undersigned counsel, The Law Offices of Richard J. Corbi PLLC, on behalf of and as representative of the estate of P8H, Inc. d/b/a Paddle 8 (the "Debtor") in the above-captioned Chapter 11 bankruptcy case (the "Chapter 11 Case"), by way of an Amended Complaint against Valentine Uhovski, Isabela Depcyzk, Norman Hanson, Christopher Hsu, Peter Rich and Sergey Skaterschikov, (collectively, the "Defendants"), based upon knowledge, information, belief, and its investigation to date, alleges as follows:

## NATURE OF THE ACTION

1. This is adversary proceeding asserts claims for breach of fiduciary duty of care, loyalty, and corporate waste, breaches of duties of good faith and fair dealing, negligent and/or fraudulent misrepresentation and violations of the New York Arts and Cultural Affairs Law relating to the sale, auction and consignment and courses of dealing between the Debtor and its general unsecured creditor constituency, to the detriment of the Debtor's unsecured creditors (the "Unsecured Creditors").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this proceeding in accordance with 28 U.S.C. §§ 157 and 1334(b). Venue is properly laid in this district pursuant to 28 U.S.C. § 1409(a).

3. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which relates to the Chapter 11 Case.

4. Pursuant to Rule 7008 of the Bankruptcy Rules, Plaintiff consents to entry of final orders and judgments by the Court if it is determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**PARTIES**

5.   The Committee is the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case on April 15, 2020 pursuant to section 1102(a) of Title 11 of the United States Code (the "Bankruptcy Code") by the Office of the United States Trustee for the Southern District of New York. [Doc. No. 23]. The Committee is vested with, among other things, the powers described in section 1103 of the Bankruptcy Code, including the power to investigate the acts, conduct, assets liabilities, and financial condition of the Debtors, and any other matter relevant to the case. Section 1109(b) of the Bankruptcy Code provides that a committee "may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).

6.   The Committee brings this action derivatively, on behalf of the estate the Debtor (the "Estate"). On April 30, 2020, the Court "so ordered" the record granting the Committee standing to commence this action. On May 1, 2020, the Court entered that certain *Order Authorizing the Committee to Commence Certain Claims and Causes of Action on Behalf of the Debtor's Estate* [Doc. No. 37]. The Committee filed an adversary complaint against Defendant Valentine Uhovsky on May 1, 2020 [Adv. Pro. No. 1] in order to preserve the right of the estate to roughly $1 million of insurance policy proceeds pursuant to the Debtor's insurance policy, which was set to expire at 10:00 p.m. (Eastern Standard Time) on May 1, 2020.

7.   On May 28, 2020, the Court entered that certain *Stipulation and Order Authorizing the Official Committee of Unsecured Creditors to Prosecute Certain Claims and Causes of Action on Behalf of the Debtor's Estate* [Adv. Pro. No. 4].

8.   The Debtor is a Delaware corporation with its principal place of business is 107 Norfolk Street, New York, New York 10002. The Debtor, a global leader in the online art auction community, specializes in conducting online auctions of fine art. Additionally, the Debtor

conducts benefit auctions in which the funds are used to pay various charities. Upon information and belief, based on the allegations set forth in the First Day Declaration of Peter Rich, a director of Debtor until his resignation on April 30, 2020, and the testimony provided at the 341 Meeting, the Debtor is an on-line auction house that specializes in selling fine art priced between $1,000 and $100,000. Pursuant to the Debtor's business model, artists and not-for-profit organizations desiring to sell their artwork or other items would consign the property to the Debtor or otherwise contract with the Debtor which then conducted an on-line auction or a "storefront sale" using its own online platforms. The Debtor is required to then pay the seller of the artwork the proceeds derived from the on-line auction or storefront sale.

9.      Defendant, Valentine Uhovski ("Uhovski"), is an individual who, upon information and belief, resides in Brooklyn, New York. Upon information and belief, Defendant Uhovski was the Chief Executive Officer of the Debtor from November 19, 2019 until his resignation on February 12, 2020. Prior to his appointment as Chief Executive Officer, Defendant Valentine Uhovski's primary responsibilities were as director of social media for the Debtor.

10.     Defendant, Izabela Depczyk ("Depczyk"), is an individual who, upon information and belief, resides in Switzerland and New York. Upon information and belief, Defendant Depczyk was the Chief Executive Officer of the Debtor from December 15, 2017 to November 18, 2019. Upon information and belief, Defendant Depczyk was appointed to the board of directors by her husband Sergey Skaterschikov pursuant to *Written Consent of the Stockholders of P8H, Inc. on December 15, 2017*. Upon information and belief, Defendant Depczyk received a mutual release (the "Invalid Release") from P8H on November 8, 2019. The Plaintiff contends that such Invalid Release does not foreclose the claims asserted against her in this adversary proceeding.

11. Defendant, Norman Hanson ("Hanson"), is an individual who, upon information and belief, resides in the United States. Upon information and belief, Defendant Hanson was a Director and Chairman of the Board of the Debtor from March 5, 2018 to November 29, 2019. Defendant Hanson was a signatory to the Invalid Release on November 8, 2019 and a board member who approved the Invalid Release at a board meeting on November 18, 2019. Upon information and belief it is unclear whether the Invalid Release was intended to be effective November 8 (when it was executed) or November 18 (when the Debtor's board approved it).

12. Defendant, Christopher Hsu ("Hsu"), is an individual who, upon information and belief, resides in the United States. Upon information and belief, Defendant Hsu was a Director of the Debtor from January 14, 2019 to February 2020. Upon information and belief, Defendant Hsu is a member of Lighthouse Collective LLC, a 14.99% shareholder of the Debtor, and on December 4, 2017, the Debtor amended its articles of incorporation to designate Lighthouse Finance Corporation as a "control person" of the Debtor.

13. Defendant, Peter Rich ("Rich"), is an individual who, upon information and belief, resides in New York. Upon information and belief, Defendant Rich was a director of the Debtor from January 14, 2019 until his resignation April 30, 2020. Upon information and belief, Defendant Rich was a board member, along with Defendant Hanson, who approved the Invalid Release at a board meeting on November 18, 2019. Upon information and belief, Defendant Rich authorized the Debtor to commence the Chapter 11 Case. [Doc. No. 1]. As a direct result of Defendant Rich's resignation in or about late April or early May 2020, a Chapter 11 trustee was appointed in this Chapter 11 Case.

14. Defendant, Sergey Skaterschikov ("Skaterschikov"), is an individual who, upon information and belief, resides in Switzerland and New York. Upon information and belief,

Defendant Skaterschikov is the founder of Native S.A., a 15% shareholder of the Debtor [Doc. No. 1] and is the spouse of Defendant Depczyk. Upon information and belief, Defendant Skaterschikov was neither a director nor an officer of the Debtor, but exercised significant control over the Debtor as a result of his spouse being named CEO and receiving an Invalid Release upon the conclusion of her employment.

## GENERAL BACKGROUND

15. On March 16, 2020 (the "Petition Date"), the Debtor's bankruptcy case was commenced with an voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.

16. The Debtor's 341(a) meeting of creditors (the "341 Meeting") was held on April 23, 2020. At the 341 Meeting, Defendant Rich stated that he would not pursue any director and officer claims.

17. On April 30, 2020, the Court directed the appointment of a Chapter 11 trustee (the "Trustee") in this Bankruptcy Case. [Doc. No. 36]

## THE DEBTOR'S DETERIORATING FINANCIAL CONDITION AND INSOLVENCY

18. At all relevant times, the Debtor was insolvent and therefore, its board of directors and controlling shareholders owed a fiduciary duty to its creditors. For the year ending December 31, 2018, the Debtor had: (i) net cash in the amount of $752,613.14; (ii) net liabilities and equity in the amount of $2,412,405.03; and (iii) P/L net expenses in the amount of $4,840,844.36 and P/L net income of $4,657,672.18. For the year ending December 31, 2019, the Debtor had: (i) net cash in the amount of $510,271.25; (ii) net liabilities and equity in the amount of $1,286,452.78; and (iii) P/L total expenses in the amount of $5,026,831.03 and P/L net income of $4,496,725.04. As a result of the deteriorating numbers, the Debtor's board refused to approve a budget for the year 2020.

Defendant Uhovski submitted updated budgets, but were never approved by the Debtor's board of directors.

19.     Moreover, e-mail correspondence on December 20, 2019 between Defendant Uhovski and Mr. John Textor, in which Defendant Uhovski seeks $600,000.00 in order to meet the Debtor's payroll and payables for auctions from November and December 2019, reveals that Mr. John Textor advised Defendant Uhovski that there needs to be an approved budget by the Debtor's board and not just a request from the "company" and "lender" as a result of the "obvious going concern issues of the company" in order to meet operating expenditures. Defendant Uhovski further acknowledges in an email correspondence to Mr. John Textor on January 3, 2020, that failure to meet auction payables will damage the reputation of the Debtor and result in an acrimonious business relationship that may prevent future business. In fact, upon the Debtor falling a week behind in payments to consignors, some claimants eventually showed up at the Debtor's headquarters demanding payment while other high profile ones grew impatient. By the end of January 2020, it became clear that the Debtor would be in no position to make payments to consignors in the foreseeable future as the Debtor would not be "break even" until the end of May 2020 based on a February 4, 2020 email sent by Mr. Textor to Defendant Rich. As a result, the aging of amounts due to the auction sand storefront sellers would likely have increased from 1-30 days and 31-60 days, respectively, to unpayable. This is evidenced by the civil action commenced in New York State Supreme Court, County of New York, by the New American Cinema Group on March 10, 2020, index no. 651594/2020. Ultimately, that occurred and now the Chapter 11 Trustee is implementing a process to address those claims in the Bankruptcy Case.

20.     Against the backdrop of these financial projections and attempts to meet the Debtor's operating expenses and obligations to the purchasers of items offered in online auctions and

storefront sales administered by the Debtor, according to October and November 2019 board minutes, Defendant Rich informed the board that he had narrowed the search to two law firms for the board to consult as insolvency counsel. Insolvency counsel was retained in February 2020 and subsequently, the Debtor commenced the Chapter 11 Case on the Petition Date.

## SUBSTANTIVE ALLEGATIONS

### DEFENDANT UHOVSKI

21. During his short tenure as the Debtor's CEO, the Defendant Uhovski, with Defendant Hsu and Defendant Rich, engaged in acts of gross mismanagement and disloyalty to the Debtor's Unsecured Creditors. For example, upon information and belief, Defendants misappropriated certain funds from the auctions, including charity auctions, by using those proceeds to pay the operating expenses of the Debtor. Indeed, as a direct result of such misappropriation, one non-profit entity that engaged the Debtor to administer an online auction of artwork, recently sued, among others, the Debtor and others for misappropriating the proceeds from the auction. Other entities have threatened or commenced adversary proceedings in the Debtor's Chapter 11 Case for similarly failing to pay over proceeds generated from on-line auctions and storefront sales..

22. It was soon discovered that a result of the Defendant's actions of failing to properly apportion sale proceeds, the Debtor's Unsecured Creditors suffered damages in the amount of at least $1 million. Upon information and belief, that number has increased as a result of the Chapter 11 Case.

### DEFENDANTS DEPCZYK AND SKATERSCHIKOV

23. Defendant Depczyk, installed by her spouse Defendant Skaterschikov as the Debtor's Chief Executive Officer, likewise breached her fiduciary duties to the Debtor and the Unsecured Creditors. Defendant Depczyk used the Debtor's funds to throw lavish parties to the detriment of

the Unsecured Creditors. Defendant Skaterschikov, using his position as a large shareholder and potential lender of the debtor through his position at Native S.A., installed his spouse as a Chief Executive Officer and helped her obtain the Invalid Release to the detriment of the Unsecured Creditors.

### **DEFENDANTS HANSON, HSU AND RICH**

24. Defendants Hanson, Hsu and Rich, as board members, were acutely aware of the Debtor's insolvency, yet continued to permit auction sale proceeds to be used for the Debtor's operating expenses instead of being paid to the sellers. In particular, Defendants Hanson and Rich authorized the Invalid Release for Defendant Depczyk and at the 341 Meeting, Defendant Rich stated that he would not pursue any director and officer claims on behalf of the Estate.

### **DEFENDANTS FIDUCIARY DUTIES**

25. By reason of the Defendants positions as board members, chief executive officers, and controlling shareholders, each individually and collectively, owed the Debtor's Unsecured Creditors, upon its descent into insolvency, fiduciary duties of due care, loyalty, and candor. At all times relevant, the Defendants were required to use the utmost ability to manage Debtor in a fair, just, honest, and equitable manner, to exercise due care and diligence in the administration of the affairs of Debtor and in the use and preservation of its property and assets, and to act in furtherance of the best interests of Debtor and its stakeholders, including its Unsecured Creditors, and not in furtherance of their own personal interests or benefits.

26. By virtue of their fiduciary duties, the Debtor was required to, among other things:

(a) conduct the affairs of the Debtor in an efficient, businesslike manner, so as to make it possible to provide the highest quality performance of its business, to avoid wasting its assets, and to maximize its value;

      (b)      ensure that the Debtor was operated in a diligent, honest, and prudent manner;

      (c)      refrain from advancing his own interests at the expense of Debtor and its stakeholders, including its creditors;

      (d)      act in compliance with applicable law; and

      (e)      be candid with the Debtor and its stakeholders, including the Unsecured Creditors, with respect to all matters involving or affecting Debtor.

27.      The conduct of the Defendants complained of herein involves a knowing and culpable violation of ~~his~~ their obligations as fiduciaries of Debtor and its stakeholders, including the Unsecured Creditors, the absence of good faith, and a reckless disregard for their duties. The Defendants were aware that those violations, absences of good faith, and reckless disregard of duties posed a risk of serious harm to Debtor and its stakeholders, including the Unsecured Creditors.

### CLAIMS FOR RELIEF

### COUNT ONE
**(Breach of Fiduciary Duty of Care and Corporate Waste)**

28.      The Committee repeats and realleges each and every allegation contained above as if set forth at length herein.

29.      The Defendants owed the Debtor and its Unsecured Creditors fiduciary duties, including the duties of loyalty, care, and candor.

30.      Pursuant to their fiduciary duty of care, the Defendants were, at all times, required to exercise due care and diligence in the administration of the affairs of the Debtor and in the use and preservation of its property and assets. The Defendants, however, were grossly negligent in

his administration of the affairs of the Debtor and in the use and preservation of its property and assets.

   31.  The Defendants breached their fiduciary duty of care by, *inter alia*:

    (a) Recklessly failing to pay over to the sellers of artwork sold through Debtor's on-line auctions and storefront sales the proceeds from those on-line sales, thereby resulting in the accrual of substantial claims and obligations that could not otherwise be satisfied in the ordinary course of the Debtor's business and affairs; and

    (b) Follow the directions of the board of directors.

   32.  The Committee has no adequate remedy at law.

   33.  As a direct result of the Defendants breaches of fiduciary duty of care, the Debtor's Estate has suffered damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law.

## COUNT TWO

**(Breach of Fiduciary Duty of Loyalty)**

   34.  The Committee repeats and realleges each and every allegation contained above as if set forth at length herein.

   35.  The Defendants owed Debtor and its Unsecured Creditors fiduciary duties, including the duties of loyalty, care, and candor.

   36.  Pursuant to his fiduciary duty of loyalty, Defendants were, at all times relevant, required to act in furtherance of the best interests of Debtor and not in furtherance of their own personal interests or benefits.

   37.  The Defendants breached their fiduciary duty of loyalty by, *inter alia*:

    a. Recklessly failing to pay over to the sellers of artwork sold through Debtor's on-line auctions and storefront sales the proceeds from those on-line sales, thereby resulting in the accrual of substantial claims and obligations that could not otherwise be satisfied in the ordinary course of the Debtor's business and affairs;

    b. Follow the directions of the board of directors

38.    The Committee has no adequate remedy at law.

39.    As a direct result of Defendants' breaches of fiduciary duty of loyalty, the Debtor's Estate has suffered damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law.

## COUNT THREE

**(Breach of Duties of Good Faith and Fair Dealing)**

40.    The Committee repeats and realleges each and every allegation contained above as if set forth at length herein.

41.    Defendants breached their duties of good faith and fair dealing in its negotiations with the Unsecured Creditors.

42.    The Committee has no adequate remedy at law.

43.    As a direct result of Defendants' breaches of fiduciary duty of good faith and fair dealing, the Debtor's Estate has suffered damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law.

## COUNT FOUR

**(Negligent and/or Fraudulent Misrepresentation)**

44.    The Committee repeats and realleges each and every allegation contained above as if set forth at length herein.

45. The basis for the Committee's negligent and/or fraudulent misrepresentation claim is sown throughout this complaint.

46. The Committee has no adequate remedy at law.

47. As a direct result of Defendants' negligent and fraudulent misrepresentation, the Debtor's Estate has suffered damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law.

## COUNT FIVE

### (Breach of New York Arts and Cultural Affairs Law)

48. The Committee repeats and realleges each and every allegation contained above as if set forth at length herein.

49. As alleged by certain charities in pending litigation and/or other demands for recovery, the Defendants violated Section 12 of the New York Arts and Cultural Affairs Law by using proceeds from the sale of consignment art to pay operating expenses of the Debtor instead of paying the sellers.

50. The Committee has no adequate remedy at law.

51. As a direct result of Defendants' violation of the New York Arts and Cultural Affairs Law, the Debtor's Estate has suffered damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law.

WHEREFORE, the Committee demands judgment in its favor and against the Defendant, as follows:

   a. The Committee seeks an amount not to be less than $1,000,000.000, the exact amount to be determined at trial, for Defendants' breach of fiduciary duty of care, loyalty, and corporate waste, breaches of duties of good faith and fair dealing, negligent and/or fraudulent misrepresentation and violations of the New York Arts and Cultural Affairs Law;

    b.    Fees, interest and costs of suit; and

    c.    granting such other relief that this Court deems just, proper, and equitable.

Dated: August 28, 2020　　　　　　　　**THE LAW OFFICES OF RICHARD J. CORBI PLLC**
New York, New York

　　　　　　　　　　　　　　　　　　*/s/ Richard J. Corbi*
　　　　　　　　　　　　　　　　　　Richard J. Corbi, Esq.
　　　　　　　　　　　　　　　　　　1501 Broadway, 12th Floor
　　　　　　　　　　　　　　　　　　New York, New York 10036
　　　　　　　　　　　　　　　　　　Telephone: (646) 571-2033
　　　　　　　　　　　　　　　　　　Email: rcorbi@corbilaw.com

　　　　　　　　　　　　　　　　　　*Counsel for the Official*
　　　　　　　　　　　　　　　　　　*Committee of Unsecured Creditors*